UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JUAN CARLOS GOMEZ, | : | |
|     Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:02-cv-1002 (JCH) |
| v. | : | |
| | : | |
| JOHN ASHCROFT, Attorney General | : | |
|     Respondent. | : | DECEMBER 2, 2003 |

RULING DENYING
PETITION FOR WRIT OF HABEAS CORPUS
AND STAY OF REMOVAL [Dkt. No. 1]

Petitioner Juan Carlos Gomez requests that this court grant his petition for the writ of habeas corpus [Dkt. No. 1] brought pursuant to 28 U.S.C. 2241. Gomez argues that he has not committed an offense which renders him removable or, in the alternative, that he is eligible for discretionary relief. For the reasons stated below, the court rejects both of the petitioner's arguments and denies his petition for the writ of habeas corpus.

I.   FACTS AND PROCEDURAL HISTORY

Petitioner Juan Carlos Gomez, a 35-year-old native citizen of Columbia, has been a lawful permanent resident of the United States for the past twenty-two years. Gomez first entered the United States as an immigrant on or about May 10, 1980, at the age of thirteen.

On September 10, 1996, Gomez pled guilty to and was convicted of third degree

1

robbery in violation of Connecticut General Statutes § 53a-136 based on conduct that occurred in November 1994. He was sentenced to three years' imprisonment, execution suspended, and three years' probation to run concurrently with a prior sentence of probation for a narcotics possession violation.[1] On October 25, 1999, as a result of a probation violation, Gomez's probation on the drug charge was revoked and his sentence on the robbery conviction was modified so that he was ordered to serve three years of his five-year prison sentence.

In May 2000, the INS initiated removal proceedings against Gomez. Initially, as a pro se litigant, and then again later, when represented by counsel, Gomez conceded his removability. The immigration judge (IJ) found by "clear and convincing evidence" that Gomez was removable and ordered him to be removed. Specifically, the IJ concluded that Gomez's conviction for third degree robbery in violation of Conn. Gen. Stat. 53a-136 "clearly falls within the definition of a crime of violence as found in 18 United States Code Section 16" and that he had therefore committed "an aggravated felony." INS Resp.: IJ's Oral Decision, dated January 10, 2002, at 2 [Dkt. No. 6]. On appeal, the Board of Immigration Appeals (BIA) remanded to the IJ "in order that the respondent may be afforded an opportunity to apply for relief under section 212(c) . . . and any other relief for

---

[1] On January 16, 1996, Gomez had plead guilty to possession of narcotics in violation of Conn. Gen. Stats. § 21a-279a and received three years imprisonment, execution suspended, and three years probation.

which he may be eligible."[2]  INS Resp.: BIA Order, dated February 28, 2001 [Dkt. No. 6].

On remand, the IJ concluded as a matter of law that Gomez did not "fall[] within the ambit of 212(c) eligibility under [the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001)]" because he "pled guilty on September 11th, 1996," "after the enactment of ADEPA on April 24th, 1996."  INS Resp.: IJ's Oral Decision, dated January 10, 2002, at 7 [Dkt. No. 6].  Nonetheless, the IJ concluded that if he were able to exercise his discretion and grant a 212(c) waiver of deportation, he "would grant the respondent a favorable exercise of discretion."  Id. at 9.  In closing, the IJ ordered Gomez's removal to Columbia.  Gomez subsequently filed this petition for the writ of habeas corpus.

## II.  STANDARD OF REVIEW

Judicial review of final orders of removal against aliens who are removable based upon a conviction of an aggravated felony is generally prohibited.  See 8 U.S.C. § 1252(a)(2)(C).  However, federal courts retain residual jurisdiction to determine whether an alien has been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), as defined by 18 U.S.C. § 16.  See generally Chery v. Ashcroft, Dkt. No. 02-2652, 2003 U.S. App. LEXIS 21025, *4-5 (October 17, 2003).

---

[2] The defendant simply misconstrues the BIA's order when he states that "[t]he Board of Immigration Appeals agreed that [Gomez] had committed an aggravated felony but that he was entitled to discretionary relief under former Section 212(c) of the Immigration and Nationality Act."  Pet. Supp. Mem. at 1 [Dkt. 2].

Because the BIA is charged with administering the Immigration and Nationality Act ("INA"), its interpretation of the INA's provisions must be granted deference. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). However, federal courts review its interpretation of federal or state criminal statutes de novo. See Dalton v. Ashcroft, 257 F.3d 200, 203 (2d Cir. 2001); Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000).

Thus, this court will review de novo the various questions presented in this case: first, whether third-degree robbery under Connecticut law qualifies as a "crime of violence" under 18 U.S.C. § 16 and thus an "aggravated felony"; second, whether it is permissible to apply retroactively the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 100 Stat. 3009-546 et seq. (Sept. 30, 1996), to an alien whose criminal conduct pre-dates its enactment; and, third, whether section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see AEDPA § 440(d); Pub. L. No. 104-132, 110 Stat. 1214 et seq., precludes eligibility for 212(c) relief of aliens who committed their qualifying crimes prior to its enactment on April 24, 1996 but who pled guilty after its enactment. The court answers all three questions in the affirmative and therefore denies Gomez's petition for the writ of habeas corpus.

II.   DISCUSSION

    A. A "Crime of Violence" and Therefore an "Aggravated Felony"?

The first issue presented in this case involves the relatively straightforward question of whether Gomez's state conviction for third-degree robbery in violation of Conn. Gen. Stat. § 53a-136 is a "crime of violence" as defined in the federal criminal code, 18 U.S.C. § 16.[3] As such, this court reviews de novo whether a conviction under Conn. Gen. Stat. § 53a-136, as defined in § 53a-133, qualifies as a "crime of violence." See Dalton, 257 F.2d at 203. The court agrees with the IJ and concludes that it does.

Any alien who is convicted of an "aggravated felony" after admission to the United States may be deported. 8 U.S.C. § 1227(a)(2)(A)(iii). Twenty-one aggravated felonies are specified in various subsections of 8 U.S.C. § 1101(a)(43)(F). Subsection (F) thereof identifies one such "aggravated felony" as a "crime of violence" for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F). "Crime of violence" is, in turn, defined in Title 18 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the

---

[3] Gomez also argues that "he is not an 'aggravated felon' because he has not violated INA 101(a)(43)(G)[:] a theft crime." Pet. Supp. Mem., at 2. Because the IJ found that violations of Conn. Gen. Stat. 53a-136 "clearly fall[] within the definition of a crime of violence as found in 18 United States Code Section 16," the IJ concluded that Gomez had committed "an aggravated felony" and thus that the INS had established his removability. INS Resp.: IJ's Oral Decision, dated January 10, 2002, at 2 [Dkt. No. 6]. Because this court agrees with this conclusion as matter of law, it is wholly irrelevant whether Gomez's robbery conviction qualifies as a "theft crime" under the statute.

course of committing the offense.

18 U.S.C. § 16.

Gomez was convicted of third-degree robbery under Conn. Gen. Stat. § 53a-136, which references Conn. Gen. Stat. § 53a-133, which provides:

> A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

Conn. Gen. Stat. § 53a-133. Based on the plain language of the Connecticut statute, which implicates only acts which "threaten[] the immediate use of physical force," third-degree robbery clearly qualifies as a "crime of violence" as defined by federal statute. See generally Chery, 2003 U.S. App. LEXIS 21025, at *4-5 (third degree intentional assault in Connecticut does not qualify as a "crime of violence" for immigration purposes); Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003)(Connecticut's statutory rape law meets "crime of violence" requirement because such crimes involve a "substantial risk" of physical force under the federal statute); Dalton v. Ashcroft, 257 F.3d 200 (2d Cir. 2001)(conviction for DWI under New York law does not constitute a "crime of violence").

In his memoranda to this court, Gomez offers various arguments that the statute's references to larceny, the definition of which does not necessarily entail the use of physical

6

force, somehow negates the statute's clear requirement that offenders must "use[] or threaten[] the immediate use of physical force upon another person." Specifically, he argues that the last phrase of § 53a-133(2), "to engage in other conduct which aids in the commission of the larceny," suggests that the statute can encompass conduct which is not a "crime of violence." Gomez simply misreads the statute. The statute, which begins with the introductory language "uses or threatens the immediate use of physical force," has two subsidiary clauses, one of which is necessary to the commission of the crime. The determinative phrase–i.e. ". . . uses or threatens the immediate use of physical force . . . "–clearly applies to both subsections (1) and (2) of § 53a-133. Contrary to Gomez's contention, subsection (2) is not an alternative to the initial "uses or threatens the immediate use of physical force" phrase.

 Further, subsection (2) of the statute reads: "A person commits robbery when . . . he uses or threatens the immediate use of physical force . . . for the purpose of . . . (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." Under subsection (2), it is the victim ("owner") or a third party ("another person")–not the criminal actor–who "engages in other conduct which aids in the commission of the larceny." It is therefore clear that violations of § 53a-136, under either subsection (1) or (2) of § 53a-133, qualify as "crime[s] of violence."

Gomez also argues that the changes enacted by IIRIRA, which in effect expanded the definition of "aggravated felony," should not be applied retroactively to his case because he entered a guilty plea on September 10, 1996, a few weeks before September 30, 1996, the effective date of the IIRIRA amendments. Gomez correctly notes that, at the time of his plea, before the IRIRA amendments were enacted, conviction for robbery was not an aggravated felony unless a sentence of five years or more had actually been served.

This court finds that the Second Circuit's decision in Kuhali v. Reno, 266 F.3d 93, 110 (2d Cir. 2001) effectively forecloses this line of argument. There, the Second Circuit reasoned that the strong presumption against the retroactive legislation embodied in the Supreme Court's decision in Landgraf v. USI Film Products, 511 U.S. 244 (1994) was inapplicable to the 1996 IIRIRA amendments expanding the definition of "aggravated felony" because "Congress had explicitly defined the temporal reach of the new statute." Id. at 110. The Court of Appeals explained:

> The amended INA § 101(a)(43), which defines the term "aggravated felony," closes with the statement: "Notwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43) (as amended by IIRIRA § 321(b), 110 Stat. at 3009-628). The effective date provision for the new definition of "aggravated felony" similarly declares: "The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act [Sept. 30, 1996], regardless of when the conviction occurred . . . ." Id. § 1101 note, at 818 (Supp. V 1999) (Effective Date of 1996 Amendments) (alteration in original) (quoting IIRIRA § 321(c), 110 Stat. at 3009-628). . . .

Id. (citing cases). See Sousa v. INS, 226 F.3d 28, 33-34 (1st Cir. 2000)("[W]hen Congress in IIRIRA enlarged the definition of aggravated felony and made it explicitly applicable to convictions regardless of when they were entered, Congress made perfectly clear its intent that aliens in this enlarged class should now be subject to removal."); Bazuaye v. INS, No. 97 Civ. 1280, 1997 U.S. Dist. LEXIS 4919, *2 (S.D.N.Y. April 15, 1997) ("IIRIRA § 321(c) provides further that amendments to the definition of aggravated felony 'shall apply to actions taken on or after the date of enactment . . . regardless of when the conviction occurred . . . .'"); Maria v. McElroy, 68 F.Supp. 2d 206 (E.D.N.Y. 1999)(same); see generally 6 Gordon, Mailman, & Yale-Loehr, Immigration Law and Procedure § 71.05[2][d], at 71-157 & n.399 ("The IIRAIRA states that the amendments made to the definition of aggravated felonies within the IIRAIRA apply to any actions brought after September 30, 1996, the date of the enactment of the Act, even if the conviction occurred before the enactment of the amendments.")(citing cases in a footnote). See also St. Cyr, 533 U.S. at 319-20 & n.43 (citing IIRIRA § 321(b) & (c) as examples of "Congress' willingness . . . to indicate unambiguously its intention to apply specific provisions retroactively").

 The Second Circuit in Kuhali likewise concluded that, even though the INS initiated removal against the petitioner on January 13, 1999, "well after IIRIRA's enactment," his pre-IIRIRA conviction was "clearly encompassed by the new provisions." 266 F.3d at 111.

9

Again, the Court in Kuhali found it unnecessary to address Landsgraf retroactivity concerns because "Congress ha[d] made explicit that the new provisions of IIRIRA [applied] retroactively." Id.  Thus, although removal proceedings were not commenced against Gomez until May 18, 2000, this court concludes that IIRIRA's expanded definition applies in his case and qualify his as removable.

Finally, Gomez argues that he is not an aggravated felon because "he was not ordered to serve any time in prison, but rather[,] his sentence was suspended." Pet. Reply at 4 [Dkt. No. 7].  The court agrees with the respondent that Gomez appears to "concede[] that he was sentenced to a term of 5 years['] imprisonment, which term was thereafter suspended and then a term of probation imposed." Resp Surreply at 5 [Dkt. No. 8].

As noted earlier, under IIRIRA's more expansive definition of "aggravated felony," which should be applied retroactively, only a "crime of violence . . . for which the term of imprisonment is at least one year" constitutes an "aggravated felony." 8 U.S.C. § 1101(a)(43)(F).  Section 101(a)(48)(B) of Title 8 states that "any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 8 U.S.C. § 1101(a)(48)(B) (emphasis added). See Reid v. Holmes, 323 F.3d 187, 188-89 (2d Cir. 2003)(applying this definition of "term of imprisonment" to an alien convicted in 1989);

cf. United States v. Band-Zamora, 178 F.3d 728, 730 (5th Cir. 1999)("[W]hen a defendant is directly sentenced to probation, with no mention of suspension of a term of imprisonment, there has been no suspension of a term of imprisonment."); see generally United States v. Amaya-Benitez, 69 F.3d 1243, 1247 (1995)(interpreting the phrase "the term of imprisonment imposed" found in U.S. Sentencing Guidelines Manual § 2L1.2(b)(2)'s and concluding "the fact that a defendant served less than five years is simply irrelevant to the analysis; it is the five year term to which he was sentenced that is relevant."). Thus, under this definition, Gomez qualifies as having been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).[4]

### B. Availability of Section 212(c) Discretionary Relief

Gomez argues that AEDPA does not preclude his eligibility for 212(c) relief because

---

[4] In addition, the court notes that, as a result of Gomez's violation of his conditions of probation, a sentence of three years was ultimately imposed. There is considerable federal and Connecticut criminal case law suggesting, in the sentencing context, that a sentence imposed following revocation of probation is a modification of the original sentence, and must be considered part of the actual sentence imposed for the original offense. See, e.g., United States v. Hidalgo-Macias, 300 F.3d 281, (2d Cir. 2002); United States v. Vogel, 54 F.3d 49, 50 (2d Cir. 1995)("[W]e do not believe that Congress intended a violation of probation to be considered a separate offense. Rather, Congress clearly intended for sentence to be imposed on the original conviction.")(internal citations omitted); United States v. Compian-Torres, 320 F.3d 514, 516 (5th Cir. 2003)("Under both federal and state law a sentence imposed upon revocation of probation is treated as a sentence on the original underlying offense. Such a sentence is not considered a sanction for the new conduct which constituted a probation violation."); United States v. Moreno-Cisneros, 319 F.3d 456, 458 (9th Cir. 2003).

he committed his qualifying crime prior to its enactment on April 24, 1996.  The court rejects these arguments and concludes that this case is governed by the Second Circuit's decision in Domond v. INS, 244 F.3d 81, 85-86 (2d Cir. 2001).

Congress decided to change the immigration statutory scheme by passing AEDPA, in part to increase the number of criminal aliens deported.  See, e.g., Domond, 244 F.3d at 84 (citing legislative conference report).  At issue here is AEDPA § 440(d), which eliminated Section 212(c) hearings for aliens convicted of certain crimes.[5]

The petitioner in Domond, who had been denied discretionary relief from deportation because his conviction took place after AEDPA's enactment, argued that Section 440(d) should not apply to aliens whose criminal conduct occurred prior to AEDPA's effective date of April 24, 1996.  Applying the Landgraf retroactivity analysis, the district court held "petitioners should have their deportation proceedings governed by the laws that were in effect at the time they committed their crimes" and granted the writ.  The INS appealed, and the Second Circuit reversed, holding that an alien, subject to removal because of a felony committed prior to the effective date of AEDPA but convicted after this date, was ineligible for discretionary relief pursuant to former section 212(c).  Id.

---

[5] Subsequently, in September 1996, Congress enacted IIRIRA, which repealed § 212(c) altogether and replaced it with a different form of discretionary relief from deportation, known as cancellation of removal.  See IIRIRA § 304(b).  However, it is ADEPA § 440(d), not the later IIRIRA amendments, that eliminated eligibility for § 212(c) relief for aliens like Gomez.

12

Subsequent courts, even while questioning to some degree the logic of Domond, have unwaveringly suggested that "Domond remains binding authority in this Circuit," even after the Supreme Court's subsequent decision in St. Cyr.  See, e.g., Mohammed v. Reno, 309 F.3d 95, 103 (2d Cir. 2002); see also Rankine v. Reno, 319 F.3d 93, 100 (2d Cir. 2003)(noting that Domond is still good law and concluding that the repeal of § 212(c) applies retroactively to an alien who was convicted, following trial, of an aggravated felony while § 212(c) was still in effect); Beharry v. Ashcroft, 329 F.3d 51, 63-64 (2d Cir. 2003); Zgombic v. Farquharson, 69 Fed. Appx. 2, 2003 U.S. App. LEXIS 10723, at *1 (2d Cir. May 29, 2003)(unpublished summary order); Hibbert v. Ashcroft, No. 01 Civ. 4384, 2002 U.S. Dist. LEXIS 4411 (S.D.N.Y. March 11, 2002).

The issue presented in this case is essentially the same as that decided by the Second Circuit in Domond.  Domond emphasized the date of the conviction as determinative, not the date of the criminal activity:

> We find that Section 440(d) imposes no new legal consequences on aliens like Domond whose criminal conduct pre-dates AEDPA, but whose convictions came after AEDPA's enactment.  "'It is the conviction, not the underlying criminal act, that triggers the disqualification from § 212(c) relief.'" St. Cyr, 229 F.3d at 418 (quoting Mattis v. Reno, 212 F.3d 31, 37 (1st Cir. 2000)). While the underlying criminal conduct is crucial to the conviction, it is not the conduct that bars relief under the statutory scheme.

Domond, 244 F.3d at 85-86.  In fact, "[i]n Domond, [the Second Court] explicitly noted the Supreme Court's instruction in Landgraf that reasonable reliance and settled

13

expectations provide guidance in determining retroactive effect, and concluded, as [the Second Circuit] had previously observed in St. Cyr v. INS, 229 F.3d 406 (2d Cir. 2000), aff'd, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001), that 'it would border on the absurd' to suppose that an alien might have been deterred from committing a crime had he known that, in addition to the prospect of imprisonment and deportation following release, he could not ask for discretionary relief from deportation." Mohammed, 309 F.3d at 102 (internal citations and quotation marks omitted). Thus, because Gomez, like Domond, committed his qualifying crime prior to the passage of AEDPA but pled guilty after its passage, he is not eligible for § 212(c) discretionary relief.[6]

---

[6] The only difference between Gomez's case and that of Domond is that Gomez pled guilty a few weeks prior to the passage of IIRIRA, on September 10, 1996, while Domond pled a week or so later, on November 8, 1996. The relevant change was enacted by § 440(d) of AEDPA, not IIRIRA, however. Thus, based on the reasoning employed in Domond, 244 F.3d at 86 (differentiating Domond's reliance and expectation concerns from those presented in St. Cyr, because, in the latter case, "both criminal conduct and guilty pleas pre-dated AEDPA."), and in the Supreme Court's decision in St. Cyr, which focused on the timing of the plea, see Mohammed, 309 F.3d at 102-103("The Supreme Court, agreeing with our Court, ruled that the plea agreements of aliens who were considering whether to plead guilty to an offense that rendered them deportable were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief and that depriving them of the possibility of such relief would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations.")(quoting St. Cyr, 533 U.S. at 323)(internal quotations marks omitted), this court concludes that the fact that Gomez pled guilty after § 440(d) of AEDPA took effect is determinative.

### III. CONCLUSION

For all of the aforementioned reasons, the petitioner's request for a grant of the writ of habeas corpus [Dkt. No. 1] is denied. The stay of removal entered by the court on May 2, 2003 [Dkt. No. 11] is therefore vacated.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 2nd day of December, 2003.

/s/ Janet C. Hall
Janet C. Hall
United States District Court